KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Christopher.M.Alexander@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>NERI ISIDRO CARRASCO,<br><br>Defendant. | Case No. 07CR3007-L<br><br>HEARING DATE: March 10, 2008<br>TIME: 2:00 p.m.<br><br>**THE UNITED STATES' RESPONSE AND OPPOSITION AND MOTIONS <u>IN</u> <u>LIMINE</u> TO:**<br>**(A) ADMIT A-FILE DOCUMENTS;**<br>**(B) ADMIT LACK OF PERMISSION;**<br>**(C) ADMIT TESTIMONY BY A-FILE CUSTODIAN;**<br>**(D) ADMIT EXPERT TESTIMONY;**<br>**(E) PRECLUDE ALL WITNESSES EXCEPT CASE AGENT;**<br>**(F) PROHIBIT REFERENCE TO WHY DEFENDANT REENTERED;**<br>**(G) PROHIBIT REFERENCE TO PRIOR RESIDENCY;**<br>**(H) PROHIBIT REFERENCE TO PUNISHMENT;**<br>**(I) PRECLUDE EVIDENCE OF DURESS AND NECESSITY;**<br>**(J) PRECLUDE EXPERT TESTIMONY BY DEFENSE;**<br>**(K) PRECLUDE HEARSAY;**<br>**(L) ADMIT 404(b) EVIDENCE;**<br>**(M) RECIPROCAL DISCOVERY.**<br><br>**TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES.** |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Christopher M. Alexander, Assistant United States Attorney, and hereby files its Response and Opposition and Motions in Limine. These Responses and Motions are based upon the files and case records together with the attached statement of facts and memorandum of points and authorities. The United States also renews its reciprocal discovery motion.

## I

## STATEMENT OF THE CASE

On November 1, 2007, a federal grand jury in the Southern District of California returned an Indictment charging Defendant Neri Isidro Carrasco ("Defendant") with use of a passport secured by fraud, in violation of 18 U.S.C. § 1542 and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1). On November 8, 2007, Defendant was arraigned on the Indictment and entered a not guilty plea.

On October 9, 2007, the United States filed motions for reciprocal discovery and fingerprint exemplars. On December 3, 2007, the Court held a motion hearing. The Court set another motion hearing date.

On December 13, 2007, Defendant filed motions to dismiss due to grand jury instructions and compel discovery. On January 14, 2008, the Court held another motion hearing. The Court ordered disclosure of the A-File and continued Defendant's motion to dismiss due to grand jury instructions. The Court also set trial and motion in limine dates for March 10 and 11, 2008, respectively.

On February 18, 2008, Defendant file a motion to dismiss Count One as duplicitous. On February 19, 2008, Defendant filed the following motions in limine: (1) exclude evidence of prior arrest; (2) exclude reason for referral to secondary; (3) exclude evidence under 404(b); and (4) for attorney conducted voir dire. The United States now responds to all of Defendant's motions.

## II

## STATEMENT OF FACTS

### A. The Instant Offense

On Tuesday, August 28, 2007, at approximately 11:30 a.m., Defendant entered the United States from the Republic of Mexico at the San Ysidro, California Port of Entry vehicle primary inspection lane

number 22. Defendant was the driver and sole occupant of a black 2004 Toyota Corolla, bearing California license plate 5FRM398 ("the vehicle").

Defendant claimed to Customs and Border Protection Officer Juan Lujan that he was a United States citizen and presented a United States passport in the name of Milton Morales as proof of citizenship. In response to Officer Lujan' questions, Defendant gave two negative customs declarations. Officer Lujan queried Defendant's name in the Treasury Enforcement Communications System ("TECS"). Defendant's name was a match for an individual with an outstanding warrant. Officer Lujan referred Defendant and the vehicle to the secondary area for further inspection.

**B. <u>Secondary</u>**

In the secondary area, Officer G. Ortega conducted an inspection of Defendant. Officer Ortega queried Defendant's fingerprints through the IDENT and IAFIS databases. These confirmed that Defendant's fingerprints matched those of the individual with the outstanding warrant. It was also discovered that Defendant had voluntarily departed the United States in 1988 under the name Neri Isidro Carrasco.

Special Agents Scott Pfeiffer and Christopher Good were notified and responded that afternoon to the POE. They observed numerous identification cards and documents on Defendant's person with the name Milton Morales.

Subsequent investigation by Special Agent Jeff Schabilion has shown that the Social Security number associated with the name Milton Morales was issued a card on the following dates: 1969; 1974; May 1989 in Chicago, Illinois; August 1989 in Chicago, Illinois; December 1991 in Wichita, Kansas; October 1995 in Chicago, Illinois; January 1997 in Chicago, Illinois; June 1997; March 1998; October 1998; March 1999 in Elgin, Illinois; and March 2002 in Elgin, Illinois. Moreover, a review of the Alien Registration file associated with the name Neri Isidro Carrasco contained photographs of Defendant, fingerprints of Defendant, and admissions regarding Defendant's alienage.

**C. <u>Defendant's Statement</u>**

Customs and Border Protection Officers read Defendant his <u>Miranda</u> rights. Defendant stated that he understood his rights and elected to invoke his right to remain silent.

/ / /

**D. Defendant's Criminal and Immigration History**

Defendant has two arrests: (1) driving under the influence on November 14, 1999 in Kenilworth, Illinois, and (2) oral copulation on March 10, 2005 in Los Angeles, California.

Concerning his immigration history, Defendant has been removed or excluded from the United States to Mexico on March 27, 1986 and January 10, 1988.

## III

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

The United States has and will continue to fully comply with its discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jencks Act (19 U.S.C. § 3500), and Rule 16 of the Federal Rules of Criminal Procedure.

## IV

## THE GRAND JURY WAS PROPERLY INSTRUCTED

**A. Introduction**

Defendant makes contentions relating to two separate instructions given to the grand jury during its impanelment by District Judge Larry A. Burns on January 10, 2007. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the two grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper to the point that the Indictment should be dismissed.

In making his arguments concerning the two separate instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. (Def.'s Mot. at 24 ("A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.").) Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).[1]

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law,

---

[1] In Isgro the defendants choose the abrogation of constitutional rights route when asserting that prosecutors have a duty to present exculpatory evidence to grand juries. They did not prevail. 974 F.2d at 1096 (relying on Williams, the appellate court stated that "we find that there was no abrogation of constitutional rights sufficient to support the dismissal of the indictment.").

then the power to return a no bill in such cases is the clearest form of 'jury nullification.'"[2] 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

**B. The Expanded "Wisdom of the Criminal Laws" Instruction Was Proper**

Concerning whether the new grand jurors should concern themselves with the wisdom of the criminal laws enacted by Congress, Judge Burns' full instruction stated:

> You understood from the questions and answers that a couple of people were excused, I think three in this case, because they could not adhere to the principle that I'm about to tell you.
>
> But it's not for you to judge the wisdom of the criminal laws enacted by congress; that is, whether or not there should be a federal law or should not be a federal law designating certain activity is criminal is not up to you. That's a judgment that congress makes.
>
> And if you disagree with the judgment made by congress, then your option is not to say "Well I'm going to vote against indicting even though I think that the evidence is sufficient" or "I'm going to vote in favor of even though the evidence may be insufficient." Instead, your obligation is to contact your congressman or advocate for a change in the laws, but not to bring your personal definition of what the law ought to be and try to impose that through applying it in a grand jury setting.

---

[2] The Court acknowledged that as a matter of fact jury nullification does take place, and there is no way to control it. "We recognize and do not discount that some grand jurors might in fact vote to return a no bill because they regard the law as unwise at best or even unconstitutional. For all the reasons we have discussed, there is no post hoc remedy for that; the grand jury's motives are not open to examination." 408 F.3d at 1204 (emphasis in original).

Partial Transcript pp. 8-9.

Defendant acknowledges that Judge Burns failed to limit the instruction consistent with Navarro-Vargas. Defendant contends that this addition to the approved instruction, "flatly bars the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution." (Def.'s Mot. at 12.) In concocting his theory of why Judge Burns erred, Defendant posits that the expanded instruction renders irrelevant the debate about what the word "should" means. (Def.'s Mot. at 12.) This argument mixes-up two of the holdings in Navarro-Vargas in the hope they will blend into one. They do not.

Navarro-Vargas does permit flatly barring the grand jury from disagreeing with the wisdom of the criminal laws. The statement, "[y]ou cannot judge the wisdom of the criminal laws enacted by Congress," (emphasis added) authorized by Navarro-Vargas, 408 F.3d at 1187, 1202, is not an expression of discretion. Jury nullification is forbidden although acknowledged as a sub rosa fact in grand jury proceedings. 408 F.3d at 1204. In this respect Judge Burns was absolutely within his rights, and within the law, when he excused the three prospective grand jurors because of their expressed inability to apply the laws passed by Congress. Similarly, it was proper for him to remind the impaneled grand jurors that they could not question the wisdom of the laws. As we will establish, this reminder did not pressure the grand jurors to give up their discretion not to return an indictment. Judge Burns' words cannot be parsed to say that they flatly barred the grand jury from declining to indict because the grand jurors disagree with a proposed prosecution, because they do not say that. That aspect of a grand jury's discretionary power (i.e. disagreement with the prosecution) was dealt with in Navarro-Vargas in its discussion of another instruction wherein the term "should" was germane.[3] 408 F.3d at 1204-06 ("'Should' Indict if Probable Cause Is Found"). This other instruction bestows discretion on the grand

---

[3] That instruction is not at issue here. It read as follows:

> [Y]our task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged. To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which the accused is charged.

408 F.3d at 1187.

jury not to indict.[4] In finding this instruction constitutional, the court stated in words that ring true here, "It is the grand jury's position in the constitutional scheme that gives it its independence, not any instructions that a court might offer." 408 F.3d at 1206. The other instruction was also given by Judge Burns in his own fashion as follows:

> The function of the grand jury, in federal court at least, is to determine probable cause. That's the simple formulation that I mentioned to a number of you during the jury selection process. Probable cause is just an analysis of whether a crime was committed and there's a reasonable basis to believe that and whether a certain person is associated with the commission of that crime, committed it or helped commit it.
>
> If the answer is yes, then as grand jurors your function is to find that the probable cause is there, that the case has been substantiated, and it should move forward. If conscientiously, after listening to the evidence, you say "No, I can't form a reasonable belief has anything to do with it, then your obligation, of course, would be to decline to indict, to turn the case away and not have it go forward.

Partial Transcript pp. 3-4.

> Probable cause means that you have an honestly held conscientious belief and that the belief is reasonable that a federal crime was committed and that the person to be indicted was somehow associated with the commission of that crime. Either they committed it themselves or they helped someone commit it or they were part of a conspiracy, an illegal agreement, to commit that crime.
>
> To put it another way, you should vote to indict when the evidence presented to you is sufficiently strong to warrant a reasonable person to believe that the accused is probably guilty of the offense which is proposed.

Partial Transcript p. 23.

While the new grand jurors were told by Judge Burns that they could not question the wisdom of the criminal laws per Navarro-Vargas, they were also told by Judge Burns they had the discretion not to return an indictment per Navarro-Vargas. Further, if a potential grand juror could not be dissuaded from questioning the wisdom of the criminal laws, that grand juror should be dismissed as a potential

---

[4] The court upheld the instruction stating:

> This instruction does not violate the grand jury's independence. The language of the model charge does not state that the jury "must" or "shall" indict, but merely that it "should" indict if it finds probable cause. As a matter of pure semantics, it does not "eliminate discretion on the part of the grand jurors," leaving room for the grand jury to dismiss even if it finds probable cause.

408 F.3d at 1205 (confirming holding in United States v. Marcucci, 299 F.3d 1156, 1159 (9th Cir. 2002) (per curiam)). "In this respect, the grand jury has even greater powers of nonprosecution than the executive because there is, literally, no check on a grand jury's decision not to return an indictment." 408 F.3d at 1206.

jury nullification advocate. See Merced v. McGrath, 426 F.3d 1076, 1079-80 (9th Cir. 2005). Thus, there was no error requiring dismissal of this Indictment or any other indictment by this Court exercising its supervisory powers.

Further, a reading of the dialogues between Judge Burns and the three excused jurors reflects a measured, thoughtful, almost mutual decision, that those three individuals should not serve on the grand jury because of their views. Judge Burns' reference back to those three colloquies cannot be construed as pressuring the impaneled grand jurors, but merely bespeaks a reminder to the grand jury of their duties.

Finally, even if there was an error, Defendant has not demonstrated he was actually prejudiced thereby, a burden he has to bear. "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]--a dismissal is not warranted." Isgro, 974 F.2d at 1094.

**C. The Addition to the "United States Attorney and his Assistant United States Attorneys" Instruction Did Not Violate the Constitution**

Concerning the new grand jurors' relationship to the United States Attorney and the Assistant U.S. Attorneys, Judge Burns variously stated:

> [T]here's a close association between the grand jury and the U.S. Attorney's Office.
>
> . . . . You'll work closely with the U.S. Attorney's Office in your investigation of cases.

Partial Transcript p. 11.

> [I]n my experience here in the over 20 years in this court, that kind of tension does not exist on a regular basis, that I can recall, between the U.S. Attorney and the grand juries. They generally work together.

Partial Transcript p. 12.

> Now, again, this emphasizes the difference between the function of the grand jury and the trial jury. You're all about probable cause. If you think that there's evidence out there that might cause you to say "well, I don't think probable cause exists," then it's incumbent upon you to hear that evidence as well. As I told you, in most instances, the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence.

Partial Transcript p. 20.[5]

> As a practical matter, you will work closely with government lawyers. The U.S. Attorney and the Assistant U.S. Attorneys will provide you with important services and help you find your way when you're confronted with complex legal matters. It's entirely proper that you should receive the assistance from the government lawyers.
>
> But at the end of the day, the decision about whether a case goes forward and an indictment should be returned is yours and yours alone. If past experience is any indication of what to expect in the future, then you can expect that the U.S. Attorneys that will appear in front of you will be candid, they'll be honest, that they'll act in good faith in all matters presented to you.

Partial Transcript pp. 26-27.

Defendant cites the phrase, "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence." (Def.'s Mot. at 15.) Defendant then ties this statement to the later instruction which "advis[ed] the grand jurors that they 'can expect that the U.S. Attorneys that will appear in front of [them] will be candid, they'll be honest, and . . . they'll act in good faith in all matters presented to you.'" (Def.'s Mot. at 15.) From this lash-up Defendant contends:

> These <u>instructions create a presumption</u> that, in cases where the prosecutor does not present exculpatory evidence, no exculpatory evidence exists. A grand juror's reasoning, in a case in which no exculpatory evidence was presented, would proceed along these lines:
>
> (1) I have to consider evidence that undercuts probable cause.
>
> (2) The candid, honest, duty-bound prosecutor would, in good faith, have presented any such evidence to me, if it existed.
>
> (3) Because no such evidence was presented to me, I may conclude that there is none. Even if some exculpatory evidence were presented, a grand juror would necessarily <u>presume</u> that the evidence presented represents the universe of all available exculpatory evidence; if there was more, the duty-bound prosecutor would have presented it.
>
> The instructions therefore discourage investigation--if exculpatory evidence were out there, the prosecutor would present it, so investigation is a waste of time and provide additional support to every probable cause determination: i.e., this case may be weak, but I know that there is nothing on the other side of the equation because it was not

---

[5] Just prior to this instruction, Judge Burns had informed the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

> presented. A grand jury so badly misguided is no grand jury at all under the Fifth Amendment.

(Def.'s Mot. at 16.) (Emphasis added.)[6]

Frankly, Judge Burns' statement that "the U.S. Attorneys are duty-bound to present evidence that cuts against what they may be asking you to do if they're aware of that evidence," is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it."[7] (emphasis added)). See also, United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) ("Finally, their challenge to the government's failure to introduce evidence impugning Fairbanks's credibility lacks merit because prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams) (emphasis added)).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury.[8] As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual

---

[6] The term "presumption" is too strong a word in this setting. The term "inference" is more appropriate. See McClean v. Moran, 963 F.2d 1306 (9th Cir. 1992) which states there are (1) permissive inferences; (2) mandatory rebuttable presumptions; and (3) mandatory conclusive presumptions, and explains the difference between the three. 963 F.2d at 1308-09 (discussing Francis v. Franklin, 471 U.S. 314 (1985); Sandstrom v. Montana, 442 U.S. 510 (1979); and Ulster County Court v. Allen, 442 U.S. 140, 157 & n. 16 (1979)). See also United States v. Warren, 25 F.3d 890, 897 (9th Cir. 1994).

[7] Note that in Williams the Court established:

> Respondent does not contend that the Fifth Amendment itself obliges the prosecutor to disclose substantial exculpatory evidence in his possession to the grand jury. Instead, building on our statement that the federal courts "may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress," he argues that imposition of the Tenth Circuit's disclosure rule is supported by the courts' "supervisory power."

504 U.S. at 45 (citation omitted). The Court concluded, "we conclude that courts have no authority to prescribe such a duty [to present exculpatory evidence] pursuant to their inherent supervisory authority over their own proceedings." 504 U.S. at 55. See also, United States v. Haynes, 216 F.3d 789, 797-98 (9th Cir. 2000). However, the Ninth Circuit in Isgro used Williams' holding that the supervisory powers would not be invoked to ward off an attack on grand jury procedures couched in constitutional terms. 974 F.2d at 1096.

[8] He recalled those days when instructing the new grand jurors. [Partial Transcript pp. 12, 14-16, 17-18.]

("USAM").[9] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[10] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[11]

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. No improper presumption/inference was created when Judge Burns reiterated what he knew to be a self-imposed duty to the new grand jurors. Simply stated, in the vast majority of the cases the reason the prosecutor does not present "substantial" exculpatory evidence, is because no "substantial" exculpatory

---

[9] The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[10] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/ title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, because of the accessability of the USAM on the internet, as the District Judge overseeing the grand jury he certainly could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

[11] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E." See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

evidence exists.[12] If it does exist, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. Even if there is some nefarious slant to the grand jury proceedings when the prosecutor does not present any "substantial" exculpatory evidence, because there is none, the negative inference created thereby in the minds of the grand jurors is legitimate. In cases such as Defendant's, the Government has no "substantial" exculpatory evidence generated from its investigation or from submissions tendered by the defendant.[13] There is nothing wrong in this scenario with a grand juror inferring from this state-of-affairs that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). That the USAM imposes a duty on United States Attorneys to present "substantial" exculpatory evidence to the grand jury is irrelevant

[12] Recall Judge Burns also told the grand jurors that:

> [T]hese proceedings tend to be one-sided necessarily. . . . Because it's not a full-blown trial, you're likely in most cases not to hear the other side of the story, if there is another side to the story.

Partial transcript p. 19.

[13] Realistically, given "that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge [i.e. only finding probable cause]," Williams, 504 U.S. at 51 (citing United States v. Calandra, 414 U.S. 338, 343-44 (1974)), no competent defense attorney is going to preview the defendant's defense story prior to trial assuming one will be presented to a fact-finder. Therefore, defense submissions to the grand jury will be few and far between.

since by its own terms the USAM excludes defendants from reaping any benefits from the self-imposed policy.[14] Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not cast an unconstitutional pall upon the instructions which requires dismissal of the indictment in this case or any case. The grand jurors were repeatedly instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context the unnecessary "duty-bound" statement does not mean the instructions were constitutionally defective requiring dismissal of this indictment or any indictment.

The "duty bound" statement constitutional contentions raised by Defendant do not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

**V**

**COUNT ONE SHOULD NOT BE DISMISSED FOR BEING DUPLICITOUS**

Defendant alleges that Count One is duplicitous because the separate offenses of making a false statement in an application for a passport and use of the passport which was secured by fraud are alleged in one count. (Def.'s Mot. 3.) Defendant's motion to dismiss should be denied for three reasons.

First, the Indictment charges only one crime: use of the passport which was secured by fraud. The fraud is described as a false statement in the application for the passport. If the type of fraud had not been described, Defendant would have undoubtedly filed a motion for a bill of particulars.

[14] The apparent irony is that although an Assistant U.S. Attorney will not lose a case for failure to present exculpatory information to a grand jury per Williams, he or she could lose his or her job with the United States Attorney's Office for such a failure per the USAM.

Moreover, only one means of fraud is described. Thus, Count One is not duplicitous.

Second, even if it was duplicitous, Ninth Circuit precedents permit an indictment to allege in one count a crime in which Congress has provided for several ways in which it could be committed. See United States v. Urrutia, 897 F.2d 430, 432 (9th Cir. 1990).

An indictment is duplicitous where a single count joins two or more distinct and separate offenses. See United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir. 1976). "One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense." Id.; see also United States v. Ramirez-Martinez, 273 F.3d 903, 913 (9th Cir. 2001). Conversely, alleging a single offense in an several counts of an indictment offends the rule against multiplicity, exposing a defendant to punishment on multiple counts for a single offense. UCO Oil Co., 546 F.2d at 835. To determine whether a single count contains separate offenses, the Ninth Circuit has examined four factors: (1) "the language of the statute itself," (2) "the legislative history and statutory context," (3) "the nature of the proscribed conduct itself," and (4) "the appropriateness of multiple punishment for the conduct charged in the indictment." Id. at 835-38.

The Ninth Circuit permits an indictment to allege an offense conjunctively, where the statute is written in the disjunctive. In Urrutia, 897 F.2d at 431, the defendant was charged in an indictment with entering a bank with the intent to commit "any felony affecting such bank . . . or any larceny." On appeal, the defendant argued that the statute contained separate offenses, and the United States was obligated to prove both that the defendant intended to commit a larceny and that the defendant intended to commit a felony. Id. at 432. The Ninth Circuit disagreed, concluding that "[w]hen a statute specifies two or more ways in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any of those acts conjunctively charged may establish guilt." Id.; see also United States v. Arias, 253 F.3d 453, 457-58 (9th Cir. 2001) ("When, as here, the statute speaks disjunctively, the conjunctive is not required even if the offense is charged conjunctively in the indictment.");United States v. Mal, 942 F.2d 682, 688 (9th Cir.1991) (discussing multiplicity and holding "a construction which indicates that Congress did not mean to create more than one offense.").

Here, the language of the statute sets forward a single offense that may be committed in multiple ways. Moreover, under Defendant's construction, if a jury convicted Defendant of false statement in

a passport application in one count, and of use of a passport secured by fraud in a second count, all for the single act of presenting his passport at the port of entry, multiple punishments for the single act could be imposed. Thus, while the United States has charged alternative means of proving the same offense, this is not error.

Finally, even if duplicitous, as noted in United States v Caceres-Prado, 601 F. Supp. 468, 470-71 (D. P.R. 1984), "duplicity is not fatal to an indictment, and does not require dismissal." The district court case cited by Defendant goes on to state that "[c]harges improperly joined in a single count may be segregated into a single count, or the Government may be ordered to elect on which count it will proceed." Id. (citing United States v. UCO Oil Co., 546 F.2d 833, 835 (9th Cir. 1976) (affirming the District Court dismissal after the Government refused to elect upon a finding of duplicity)).

To this end, the United States proposes the following as elements of the offense it must prove beyond a reasonable doubt:

1. Defendant willfully and knowingly used a United States passport as charged in the indictment to gain entry into the United States; and

2. The passport was secured in any way by reason of a false statement.

See 2-47 Modern Federal Jury Instructions-Criminal § 47.04 (2007) (modified); United States v. Hart, 291 F.3d 1084, 1085 (9th Cir. 2002) (per curiam); United States v. Suarez-Rosario, 237 F.3d 1164, 1167 (9th Cir. 2001); see also 9th Cir. Model Jury Instruction 7.9 (recognizing that in some cases a unanimity instruction may be appropriate).

## VI

## DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

## VII

## DEFENDANT'S MOTIONS IN LIMINE

Defendant filed four motions in limine. The United States agrees with some and disputes others as noted below.

/ / /

**A. Exclude Evidence of Prior Arrest**

Defendant moves to exclude evidence of his prior arrest. The United States agrees that the nature of the arrest would be irrelevant. However, since Defendant is disputing his identity, Defendant's booking photograph, fingerprints, and admissions regarding his identity and background from his prior arrest would be admissible.

**B. Exclude Evidence of Reason for Referral**

Defendant moves to exclude evidence of the reason for his referral. Defendant was referred to secondary to due a possible warrant for his arrest. Again, the United States agrees that the nature of the reason for the warrant would be irrelevant. However, since Defendant is disputing his identity, the match generated as a result of the name he used and fingerprint comparison should be admissible.

**C. Exclude 404(b) Evidence**

Defendant moves to exclude 404(b) evidence. Defendant was previously removed. Moreover, Defendant was arrested twice before. In each arrest, police obtained evidence of Defendant's booking photograph, fingerprints, and admissions regarding his identity and background. The United States intends to introduce this evidence as proof of identity, lack of mistake, and knowledge.

**D. The Court Should Allow Attorney Conduced Voir Dire**

Defendant requests attorney conducted voir dire. If the Court permits it, counsel for the United States respectfully requests time to conduct its own limited voir dire of the potential jurors.

**VIII**

**THE UNITED STATES' MOTIONS IN LIMINE**

A pretrial motion is an appropriate means of testing the sufficiency of a proffered defense and precluding evidence thereof if the defense is found to be insufficient. Fed. R. Crim. P. 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); United States v. Peltier, 693 F.2d 96, 97-98 (9th Cir. 1982) (per curiam); United States v. Shapiro, 669 F.2d 593, 596-97 (9th Cir. 1982); see also Fed. R. Crim. P. 12(e). Generally, motions are capable of pretrial determination if they raise issues of law, rather than issues of fact. United States v. Jones, 542 F.2d 661, 664 (6th Cir. 1976).

/ / /

**A. The Court Should Admit A-File Documents**

The United States intends to offer documents from the Department of Homeland Security's "A-File" that corresponds to Defendant's name in order to establish Defendant's identity, lack of mistake, and knowledge. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit addressed the admissibility of A-File documents in United States v. Bahena-Cardenas, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (denying a challenge based upon Crawford v. Washington, 541 U.S. 36 (2004)). The appellate court held that "the warrant of deportation is nontestimonial because it was not made in anticipation of litigation, and because it is simply a routine, objective, cataloging of an unambiguous factual matter." Id.; see also United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997).

In Loyola-Dominguez, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A-File." Id. at 1317. The district court had admitted: (1) a prior warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) an order to show cause. The defendant argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his argument, holding that the documents were properly admitted as public records. Id. at 1318. The Court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The Court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

Courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Hernandez-Herrera, 273 F.3d 1213, 1218 (9th Cir. 2001) (affirming the admission of deportation documents to prove alienage); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63

F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public records); United States v. Mendoza-Torres, 285 F. Supp. 629, 631 (D. Ariz. 1968) (admitting warrant of deportation); see also United States v. Ray, 920 F.2d 562, 566 (9th Cir. 1990) (admitting welfare documents under the business records exception).

The Ninth Circuit has affirmed the admission of orders to show cause, see Sotelo, 109 F.3d at 1449, admissions made during deportation hearings, see id., and transcripts, see Contreras, 63 F.3d at 858. In Sotelo, the Ninth Circuit described a list of evidence that was admitted at trial which supported a defendant's § 1326 conviction:

> The prosecution also presented several documents from the prior deportation proceeding. During the **deportation hearing**, Sotelo admitted, through his lawyer, allegations in the order to show cause that he is not a citizen or national of the United States and he is a native and citizen of Mexico. The prosecution presented the **order to show cause** and an **advisement of rights form**, which Sotelo signed. The advisement of rights form stated that Sotelo admitted he was in the United States illegally. Finally, the prosecution presented the order of deportation and the warrant of deportation, evidencing Sotelo's actual deportation.

109 F.3d at 1449 (emphasis added). Regarding the warning to alien ordered deported, it is admissible as evidence of Defendant's intent to violate § 1326 and lack of mistake.

Finally, as noted previously, in Loyola-Dominguez, the Ninth Circuit rejected Defendant's argument that admission of the A-File documents violates his Sixth Amendment right to confront witnesses. Id. at 1318. Nothing has changed. See Bahena-Cardenas, 411 F.3d at 1074-75. Thus, the Crawford holding does not affect the admissibility of statements that qualify for admission under those hearsay exceptions.

The United States will seek to admit the A-File documents as a nontestimonial business records and public documents. Therefore, any Confrontation Clause argument should be rejected. Accordingly, the Court should allow the United States to admit documents from Defendant's A-File.

/ / /

**B. The Evidence of Lack of Permission Is Admissible**

It is anticipated that Defendant may argue that the evidence of lack of permission is not admissible. Despite any claims to the contrary, testimony of the A-File custodian's search of the A-File is admissible. This will establish Defendant's motive for engaging in stealing another's identity.

First, the testimony is not a pretrial testimonial statement and its admission would not violate the Sixth Amendment. These arguments based upon the Confrontation Clause have been rejected. See United States v. Loyola-Dominguez, 125 F.3d 1315 (9th Cir. 1997); see also United States v. Cervantes-Flores, 421 F.3d 825, 831 (9th Cir. 2005) (holding that "the CNR is nontestimonial evidence under Crawford and thus was properly admitted by the district court."). The United States will seek to admit the testimony of the A-File custodian as a nontestimonial business record and public document. Moreover, if the Court allows him to do so, Defendant will have the opportunity to confront the custodian regarding the quality of the records checks. Therefore, any Confrontation Clause argument should be rejected.

Second, any cross-examination regarding the possibility of a nonexistent application for permission is irrelevant. See United States v. Rodriguez-Rodriguez, 393 F.3d 849, 856 (9th Cir. 2005). The Ninth Circuit has stated what is required for permission to reapply. See United States v. Pina-Jaime, 332 F.3d 609, 611-12 (9th Cir. 2003). There is no evidence supporting that Defendant has done so. Accordingly, the Court should permit the A-File custodian to testify regarding Defendant's lack of permission.

**C. The A-File Custodian May Testify Regarding A-File Records**

The United States intends to call an immigration agent as the custodian of Defendant's A-File. This testimony about the contents of the file, record-keeping procedures, and the meaning of certain documents will be based on personal, on-the-job experience. See Fed. R. Evid. 701 (such testimony is "helpful to a clear understanding of the determination of a fact in issue"); United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (in a drug case, the court found that "[t]hese observations are common enough and require such a limited amount of expertise, if any, that they can, indeed, be deemed lay witness opinion"); United States v. Loyola-Dominguez, 125 F.3d 1315, 1317 (9th Cir. 1997) (agent "served as the conduit through which the government introduced documents from INS' Alien Registry

File".). The procedure has been implicitly approved by the Ninth Circuit in numerous § 1326 prosecutions. See, e.g. United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000); Loyola-Dominguez, 125 F.3d at 1318.

**D. The Court Should Admit Testimony From the United States' Expert**

At trial, the United States intends to offer testimony of a fingerprint expert to identify Defendant as the person who was previously deported. Additionally, the United States may elicit testimony from an immigration agent as the custodian of Defendant's A-File that may explain the deportation process.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

**E. The Court Should Exclude Witnesses During Trial With The Exception of the United States' Case Agent**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been essential in moving the investigation forward to this point and is considered by the United States to be essential in the presentation of the evidence at trial. As such, the case agent's presence at trial is necessary to the United States.

**F. The Court Should Prohibit Reference To Why Defendant Reentered the United States**

Defendant may attempt to offer evidence that he was seeking to visit family members as the reason for his reentry. The Court should preclude him from doing so.

Evidence of why Defendant violated § 1542 or §1028A is irrelevant to the question of whether

he did so -- the only material issue in this case. The case of United States v. Komisaruk, 885 F.2d 490 (9th Cir. 1980) is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. Id. at 491. On appeal, she argued that the district court erred in granting the government's motions in limine to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," Id. at 492, and the Ninth Circuit affirmed. Similarly here, the reason why Defendant reentered the United States is irrelevant to any fact at issue in this case.

**G. The Court Should Prohibit Reference To Prior Residency**

If Defendant seeks to introduce evidence of any former residence in the United States, legal or illegal, at trial, the Court should preclude him from doing so. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, the district court granted the United States' motion in limine to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a § 1326 prosecution. 3 F.3d 1333, 1334 (9th Cir. 1993) overruled on limited and unrelated grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996). He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id.

**H. The Court Should Prohibit Reference To Defendant's Health, Age, Finances, Education, and Potential Punishment**

Evidence of, and thus argument referring to, Defendant's health, age, finances, education, and potential punishment is inadmissible and improper.

Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value

is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).[15]

Reference to Defendant's health, age, finances, education, and potential punishment may be relevant at sentencing. However, in an identity theft trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

**I. <u>The Court Should Preclude Evidence of Duress and Necessity</u>**

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. <u>See</u> <u>United States v. Bailey</u>, 444 U.S. 394 (1980) (addressing duress); <u>United States v. Moreno</u>, 102 F.3d 994, 997 (9th Cir. 1996) (addressing duress). Similarly, a district court may preclude a necessity defense where"the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." <u>United States v. Schoon</u>, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

<u>United States v. Bailey</u>, 444 U.S. 394, 410-11 (1980); <u>Moreno</u>, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. <u>See</u>, <u>e.g.</u>, <u>Bailey</u>, 444 U.S. at 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

---

[15] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. <u>United States v. Frank</u>, 956 F.2d 872, 879 (9th Cir. 1991).

(4) that there was no other legal alternatives to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

**J. The Court Should Preclude Any Expert Testimony By Defense Witnesses**

The United States requests permission to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, the United States requests disclosure of written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. While defense counsel may wish to call an expert to testify, Defendant must provide notice of any expert witness and any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.

2000).

**K. Self-Serving Hearsay Is Inadmissible**

Defendant's out of court statements are inadmissible hearsay when offered by Defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Ortega, 203 F.3d 675, 679 (9th Cir. 2000); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988); see also United States v. Alarcon-Simi, 300 F.3d 1172 (9th Cir. 2002) (holding that the defendant's post-arrest statement was not admissible as an excited utterance).

In this case, the United States anticipates that Defendant may attempt to have the United States' witnesses testify about certain statements which Defendant made to Agents. Thus, the United States moves, in limine, to prohibit Defendant from eliciting self-serving hearsay from: (a) the United States' witnesses or (b) defense witnesses.

**L. The Court Should Admit 404(b) Evidence**

Defendant was provided a copy of his rap sheet and many of his A-File documents. As noted previously, the United States intends to introduce his arrest and immigration history as 404(b) evidence.

This crime, wrong, or act is relevant to Defendant's current case. Rule 404(b) of the Federal Rules of Evidence precludes the admission of evidence of "other crimes . . . to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of other crimes, however, is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998). The court should consider the following: (1) the evidence of other crimes must tend to prove a material issue in the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time. Id. In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test - its probative value must not be substantially outweighed by the danger of unfair

prejudice. See Fed. R. Evid. 403.

In United States v. Graham, 575 F.2d 739, 740 (9th Cir. 1978), the defendant was being prosecuted for § 1326 and had previously been convicted of "being illegally in the United States." The district court admitted a probation officer's testimony that the defendant was the same person that had previously been convicted of "being illegally in the United States." Id. The defendant appealed arguing that the probation officer's testimony was not admissible. Id. Holding that "[t]his appeal approaches the frivolous," the Ninth Circuit affirmed. Id.

Moreover, this evidence is also relevant to Defendant's trustworthiness and would tend to make the existence of facts that are of consequence more or less probable. There is a reason for Defendant to lie (i.e., avoiding being removed again).

**IX**

**RENEWED MOTION FOR FINGERPRINTS AND RECIPROCAL DISCOVERY**

The United States renews its request for fingerprints and reciprocal discovery. As of today, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided.

**X**

**CONCLUSION**

For the above stated reasons, the United States respectfully requests that Court deny Defendant's motions, except where unopposed, and grant its motions in limine.

DATED: March 4, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Christopher M. Alexander*

CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>NERI ISIDRO CARRASCO,<br>Defendant. | Criminal Case No. 07CR3007-L<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response to Defendant's Motions to (1) dismiss due to grand jury instructions, and (2) compel discovery/preserve evidence, together with statement of facts, memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Robert Rexrode , Esq.
   Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 4, 2008.

*s/Christopher M. Alexander*

CHRISTOPHER M. ALEXANDER